# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1061**
**KA 13-01519**
PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                     MEMORANDUM AND ORDER

RAJSHEEM J. RICHARDSON, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

LAW OFFICES OF JOSEPH D. WALDORF, P.C., ROCHESTER (JOSEPH D. WALDORF OF COUNSEL), FOR DEFENDANT-APPELLANT.

CINDY F. INTSCHERT, DISTRICT ATTORNEY, WATERTOWN (HARMONY HEALY OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Jefferson County Court (Kim H. Martusewicz, J.), rendered May 24, 2013. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a controlled substance in the third degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and, in appeal No. 2, he appeals from a judgment convicting him upon his plea of guilty of criminal possession of a controlled substance in the third degree (*id*.) involving a separate incident. County Court sentenced defendant to concurrent determinate terms of incarceration.

Contrary to defendant's contention in appeal No. 1, the court properly refused to suppress evidence, i.e., cocaine, seized from an apartment that he leased as a tenant. It is undisputed that the police entered the apartment without a warrant but that no search was conducted until a warrant was obtained. We conclude that the court properly determined that the police had probable cause to believe that a crime was being committed in the apartment and that exigent circumstances existed for the warrantless entry into the apartment (*see generally People v McBride*, 14 NY3d 440, 445, *cert denied* 562 US 931).

The police received a complaint that there was a strong odor of marijuana coming from a certain apartment, and that the odor was causing the complainant's children to feel ill. In response, a police officer knocked on the door of the apartment to investigate whether it

was the source of the odor.  The door was opened by a man (codefendant) who was known to the officer.  When the officer told codefendant that he needed to talk to him about the odor of marijuana, which was much stronger after the door was opened, codefendant tried to slam the door, and the officer prevented him from doing so by placing his foot in the threshold.  He and other officers thereafter entered the apartment, and he observed two other occupants and what appeared to be a large amount of cocaine on the kitchen counters.  Defendant was not at the apartment.  The officer left the apartment to obtain a warrant and, after doing so, the evidence was seized and the occupants were arrested.

Less than two hours before he entered defendant's apartment, the same officer was conducting surveillance of the apartment building for suspected drug trafficking, and he observed defendant enter the building by a door that led to the apartment.  Shortly thereafter, the officer observed a man known to him to have a revoked driver's license exit the building from the door by which defendant entered.  After the man drove away, the officer arrested him for unauthorized operation of a motor vehicle, and the man told the officer that he had purchased cocaine from codefendant, whom he referred to by a nickname, at an apartment that matched the location of the apartment leased by defendant.  The man was thereafter picked up at the scene of his arrest by the mother of defendant's child, a person also known to the officer.

The officer testified that he did not seek a search warrant before knocking on the door because he was not "100% certain" that the odor was emanating from the apartment, and because the man he arrested refused to cooperate with respect to a warrant application, and he did not consider the man to be a sufficiently reliable source for purposes of seeking a warrant.

The court properly determined that the police had the right to knock on the door to investigate the complaint of the odor of marijuana (*see People v Kozlowski*, 69 NY2d 761, 762-763, *rearg denied* 69 NY2d 985; *cf. Florida v Jardines*, ___ US ___, 133 S Ct 1409, 1414-1415).  After codefendant opened the door, the officer then had probable cause to believe both that there was marijuana in the apartment, based upon the strong odor that emanated therefrom, and that codefendant had sold cocaine to the man the officer had arrested.  The court properly determined that exigent circumstances arose when codefendant attempted to slam the door inasmuch as it "is well known that persons who engage in drug trafficking will often attempt to dispose of the narcotics or escape" (*People v Brown*, 274 AD2d 941, 942, *affd* 95 NY2d 942; *see People v Ellison*, 46 AD3d 1341, 1343, *lv denied* 10 NY3d 862).  "Courts have long recognized that the Fourth Amendment is not violated every time police enter a private premises without a warrant.  Indeed, though warrantless entries into a home are 'presumptively unreasonable' . . . , '[t]he touchstone of the Fourth Amendment is reasonableness'—not the warrant requirement" (*People v Molnar*, 98 NY2d 328, 331).  We conclude that, here, both probable cause and exigent circumstances existed "to justify a warrantless entry" (*McBride*, 14 NY3d at 445; *cf. People v Hunter*, 92 AD3d 1277,

1280).

We reject defendant's further contention in appeal No. 1 that his *Alford* plea was legally and factually insufficient because he denied that he saw cocaine in the apartment on the day in question and because he denied that he knew that the occupants were selling drugs. Defendant admitted that he sublet the apartment to a person he knew to be a drug dealer, that he was at the apartment on the day in question and that, within the two weeks prior to the day in question, he had seen implements in the apartment used to make crack cocaine. Defendant also stated that he was accepting the plea offer of a sentence of 5½ years of imprisonment with three years of postrelease supervision, to run concurrently with the 5½ year term of imprisonment imposed in appeal No. 2, in order to avoid the possibility of being convicted of the more serious count charged in the indictment or receiving a longer sentence. The People made an offer of proof that, less than two hours after defendant was at the apartment, the police seized in excess of three pounds of cocaine in plain view, as well as implements to make crack cocaine; that defendant had been observed entering and leaving the building on several occasions by police officers conducting surveillance; that there were no beds or other furnishings to indicate that people lived in the apartment and that, instead, it appeared to be used to store and sell controlled substances; and that there were several recorded jail telephone conversations between codefendant and defendant that implicated defendant. It is axiomatic that, " '[i]n New York, [an *Alford*] plea is allowed only when, as in *Alford* itself, it is the product of a voluntary and rational choice, and the record before the court contains strong evidence of actual guilt' " (*People v Richardson*, 72 AD3d 1578, 1579; *see People v Hill*, 16 NY3d 811, 814). We conclude that both conditions are present on this record (*see People v Cruz*, 89 AD3d 1464, 1465, *lv denied* 18 NY3d 993; *cf. Hill*, 16 NY3d at 814; *Richardson*, 72 AD3d at 1579).

In light of our determination in appeal No. 1, there is no basis to reverse the judgment in appeal No. 2 and vacate defendant's plea of guilty (*see People v Roosevelt*, 125 AD3d 1452, 1455, *lv denied* 25 NY3d 1076; *cf. People v Fuggazzatto*, 62 NY2d 862, 863).

Frances E. Cafarell

Entered:  October 2, 2015

Clerk of the Court